**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **NO. A-14-CR-095(2) LY** |
| | § | |
| **DULCE VIRGINIA IBARRA** | § | |

## ORDER

On June 12, 2014, the Court held a hearing on the Pretrial Services Office's Petition for Action on Conditions of Release (Clerk's Doc. No. 30).  The Defendant was released on those conditions on March 27, 2014.  The Petition alleges that the Defendant violated her conditions by repeatedly using cocaine.  The allegations are based on urine specimens provided by Ibarra for testing, which returned positive for cocaine use on at least four occasions (March 31, 2014, April 9, 2014, April 14, 2014, and May 19, 2014).  On June 2, 2014, the Court ordered the issuance of a summons for the Defendant to appear for a hearing on these issues on June 12, 2014.

### Standard of Review

The standard of review applicable to this hearing is set by 18 U.S.C. § 3148(b), which provides in relevant part:

> The judicial officer shall enter an order of revocation if, after a hearing, the judicial officer –
>
> > (1) finds that there is –
> >
> > > (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> > >
> > > (B) clear and convincing evidence that the person has violated any other condition of release; and
> >
> > (2) finds that –

(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B) the person is unlikely to abide by the any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

## **Findings**

At the hearing, the government presented the testimony of Pretrial Services Officer Albert Sierra, who testified regarding the standard protocol used in collecting urine samples from supervisees.  He testified that the samples are witnessed to ensure that they are provided by the Defendant, and then tested preliminarily at that time, and, if needed, are sent to the Alere Toxicology Services laboratory for confirmation.  In this case, all of the samples except one were confirmed positive for cocaine through laboratory testing.  (The exception was the sample from April 14, 2014, which was only tested using an instant test, which tested positive.)  He further stated that when she has been confronted about the positive results, the Defendant has consistently maintained that she has not used cocaine.

Ms. Ibarra's counsel proffered at the hearing that, at his direction, Ibarra had gone to a private laboratory and had a hair sample tested for cocaine use.  The report of the results of that test were admitted as Defendant's Exhibit 1, and reflected that the test was negative for the use of cocaine. The single page report states that the identification of the person providing the sample was confirmed through "photo ID," without elaboration.  Further, there was no testimony regarding the chain of custody of the hair sample, and, specifically, confirming that the sample  was in fact that of the

Defendant (other than the statement that the person providing the sample had been identified as Dulce Ibarra through a photo ID).

After the presentation of the information above, the Court took a recess and, along with Pretrial Services Officer Sierra, spoke to a laboratory analyst from Alere regarding the seemingly inconsistent test results. He stated that if in fact the hair was collected from the Defendant, and if it had not been tampered with or adulterated in any fashion, then the results of a test on that hair sample for cocaine use should be accurate. He had no scientific explanation for why the test results in this case were inconsistent, and stated that if Ibarra had used cocaine, then the hair test is accurate enough to detect that. This information was shared with all parties on the record.

Given these facts, the Court must make a determination whether either of the tests are credible and reliable. With regard to the testing of urine, the test is well established, and is regularly used by the vast majority of courts, probation offices, and testing authorities to detect cocaine use. Further, specific to this case, there was visual confirmation that the urine tested was collected from the Defendant. On top of that, there were four separate urine samples provided by the Defendant, and all of them tested positive for cocaine use. The likelihood that there was an error in the testing of all four of those samples is minute. On the other hand, the Court has no evidence, other than the single page report, that confirms in any manner that the hair tested by the private lab in fact was collected from the Defendant's head, as opposed to someone using her photo identification, for example. And the hair test was only conducted once. From this, the Court concludes that the test results obtained from the urine samples are more reliable than the hair test results presented by the Defendant, and the Court will rely upon the urine testing, and not the hair test.

3

Accordingly, the Court finds that the Defendant has repeatedly used cocaine while on supervision, despite instructions not to, and despite being given multiple opportunities to admit to use and participate in treatment. The Court further concludes that if released back onto conditions, it is likely that Ibarra will continue to use cocaine, as she has failed to address the issue candidly, and treatment has not had success in solving Ibarra's apparent drug abuse.[1]

### Conclusion

ACCORDINGLY, IT IS ORDERED that the Petition for Action (Clerk's Doc. No. 30) is GRANTED. The Defendant is ORDERED DETAINED until further orders of the Court. The Defendant will be afforded a reasonable opportunity for private consultation with his defense counsel. The Defendant will also receive all necessary and reasonable medical attention while he is being held in custody. Upon order of a court of the United States or upon request by an attorney for the government, the person in charge of the corrections facility will deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SIGNED this 27th day of June, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[1]As noted at the conclusion of the hearing, the Court will reconsider this decision if the Defendant provides a hair sample in the presence and under the supervision of the Pretrial Services Office, that hair is tested in a laboratory that the Pretrial Office approves, and the test again is negative for cocaine use.